UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DISABILITY RIGHTS COUNCIL OF
GREATER WASHINGTON *et al.*,

    Plaintiffs,

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

    Defendant.

Civ. A. No. 04-498 (HHK/JMF)

MEMORANDUM ORDER

This case was referred to me for resolution of discovery disputes.  Currently before me is

Plaintiffs' Motion and Memorandum of Law for Expedited Discovery [#55] ("Mot. for Exp.

Disc.").  For reasons stated herein, it is, hereby, **ORDERED** that plaintiffs' motion is **DENIED**.

BACKGROUND

Plaintiffs, the Disability Rights Council of Greater Washington and patrons of the

Washington Metropolitan Area Transportation Authority's MetroAccess program, brought this

lawsuit against the Washington Metropolitan Area Transportation Authority ("WMATA") under

the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq.*, Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and 42 U.S.C. § 1983, seeking declaratory

and injunctive relief.  Plaintiffs allege that WMATA has failed to provide adequate paratransit

services through the MetroAccess program and that the service provided is materially inferior to

the Metrorail and Metrobus services available to persons without disabilities.  Plaintiffs' prayer

for relief includes "a permanent injunction . . . ordering Defendant to immediately cease its

discrimination and provide individuals with disabilities full, equal and reliable access to the

benefits of its facilities, programs, services, and activities" and "ordering Defendant to develop

and implement a remedial plan, complying with the requirements of the ADA and Rehabilitation

Act . . . ." Amended Complaint, at 44-45.

On February 27, 2006, plaintiffs filed a motion for expedited discovery, purportedly for

the purpose of gathering evidentiary support for a future motion for a preliminary injunction.  In

their motion, plaintiffs stated that they expect to file a motion for a preliminary injunction

seeking the following: (1) designation of a special master to monitor the operation of

MetroAccess and its response to rider complaints; (2) designation of an expert to monitor

compilation of statistical measures of the performance of MetroAccess and its response to rider

complaints; (3) determination of whether the contract with MV should be modified; (4)

determination of whether WMATA should commit additional vehicles, personnel,

communication systems, and other resources to MetroAccess; (5) setting substantive

performance standards for MetroAccess; and (6) provision of free rides as a measure of

compensation for MetroAccess riders denied reasonable service in the future. Mot. for Exp. Disc.

at 9-10.

In support of such a preliminary injunction motion, plaintiffs request that the Court order

WMATA to produce, on an expedited basis, documents relating to the following: (1) the

development and implementation of performance standards and statistics under the current MV

contract, including definitions and methodologies used in calculating performance standards and

statistics; (2) statistical reports and data prepared or maintained by WMATA or MV since MV

began its involvement in MetroAccess operations reflecting MV's performance; (3)

communications between or among WMATA, MV, and Logisticare or internal to any of those

entities or any governmental entity, relating to the transition of general contractor status, related

operational problems, or the evaluation of performance by MV or any subcontractor continuing

to provide service since January 15, 2006 (whether or not the document relates to that period or

prior periods), including any need for additional vehicles, staff, communications, or other

resources; (4) complaints received since April 2005 regarding MetroAccess and any resulting

investigations or findings; (5) WMATA's contention, if it so contends, that complaints were

falsified; (6) passengers who have suspended their MetroAccess subscription, or indicated an

intent to do so, since April 2005; (7) the decision to award the MetroAccess contract to MV and

any bid protests filed by would-be MetroAccess general contractors; (8) the recent terminations

of MV as the paratransit general contractor in Merced and Riverside, California; and (9)

WMATA's contention, if it so contends, that WMATA's on time rates for Metrobus or Metrorail

are relevant to evaluating MetroAccess performance. Mot. for Exp. Disc. at Exh. entitled

Plaintiffs' Request for Expedited Production of Documents to Defendant.

       Plaintiffs also request that the Court allow them to conduct at least three depositions on

an expedited basis.  Specifically, plaintiffs request (1) a 30(b)(6) deposition on computer

programs, data compilations, and documents relating to the provision of MetroAccess service,

development and implementation of performance standards and statistics under the current MV

contract, data prepared or maintained by WMATA or MV since MV began its involvement in

MetroAccess reflecting MV's performance, and complaints received or investigated by WMATA

or MV since MV began its involvement in MetroAccess relating to MV's performance (including

all subcontractors), (2) the deposition of the Associate WMATA General Manager in charge of

MetroAccess, and (3) the deposition of the Director of MetroAccess Services. Mot. for Exp.

Disc. at Exhs. entitled Notice of Deposition.

## DISCUSSION

Although the Federal Rules of Civil Procedure do not provide specific standards for

evaluating expedited discovery motions, the Rules do provide the court with the authority to

direct expedited discovery in limited circumstances. Dimension Data N. Am., Inc. v. Netstar-1,

Inc., 226 F.R.D. 528, 530 (E.D.N.C. 2005).  To determine whether expedited discovery is

appropriate, courts have developed two commonly recognized approaches: (1) the Notaro test

and (2) the reasonableness, or good cause, test. In re Fannie Mae Derivative Litig., 227 F.R.D.

142, 142 (D.D.C. 2005).  In Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982), the Southern

District of New York articulated the following stringent standard for expedited discovery: "courts

should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success

on the merits, (3) some connection between the expedited discovery and the avoidance of the

irreparable injury, and (4) some evidence that the injury that will result without expedited

discovery looms greater than the injury that the defendant will suffer if the expedited relief is

granted." Notaro, 95 F.R.D. at 415.  More recent cases have rejected the Notaro test in favor of a

reasonableness test, particularly in cases were the expedited discovery is related to a motion for a

preliminary injunction. See, e.g., Dimension Data N. Am., 226 F.R.D. at 531; Ayyash v. Bank

Al-Madina, No. 04-9201, 2005 WL 1668527, at *1 (S.D.N.Y. July 12, 2005); Qwest

Communic'ns Int'l, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419-20 (D. Colo. 2003).

Under the reasonableness test, courts consider the reasonableness of the request in light of the

entire record to date and all of the surrounding circumstances. Dimension Data N. Am., 226

F.R.D. at 531.  Factors commonly considered in determining the reasonableness of expedited

discovery include, but are not limited to: "(1) whether a preliminary injunction is pending; (2) the

breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the

burden on the defendants to comply with the requests; and (5) how far in advance of the typical

discovery process the request was made." In re Fannie Mae Derivative Litig., 227 F.R.D. at 143

(citing Entm't Tech. Corp. v. Walt Disney Imagineering, No. 03-3546, 2003 WL 22519440, at

*3-5 (E.D. Pa. Oct. 2, 2003)).

Considering the surrounding circumstances in this case, I find that plaintiffs' request is

not reasonable.  In their Amended Complaint, plaintiffs only seek a declaration that WMATA's

action and omissions violated their right and injunctions that (1) WMATA stop discriminating

against them; and (2) develop and implement a remedial plan. Amended Complaint, at 44-45.

Now, plaintiffs intend to seek much more:  (1) designation of a special master to monitor

operations; (2) designation of an expert to monitor how statistics pertaining to WMATA's

performance are gathered; (3) a judicial determination of whether the contract between WMATA

and MV should be modified and, one supposes, what the new one should be; (4) a judicial

determination of whether WMATA should commit more resources to Metro Access; and (5) free

rides to those who are denied reasonable service.  Thus, the relief that plaintiffs intend to seek in

a preliminary injunction is dramatically greater and more demanding of WMATA than the relief

they sought originally.  But, "[a] preliminary injunction is just that – preliminary." Cobell v.

Norton, 391 F.3d 251, 261 (D.C. Cir. 2004).  "It does not substitute for a trial, and its usual office

is to hold the parties in place until a trial can take place." Id.  Surely, plaintiffs are not seeking

expedited discovery to gain evidence to get the court to preserve the status quo.  They want to

gather all the evidence they would need to radically transform the status quo, on an expedited

basis.  But, that is not the purpose of a preliminary injunction, nor of the limited discovery that

the courts traditionally permit a plaintiff to have to secure it.

Moreover, a party is not entitled to an injunction, preliminary or final, any greater than

necessary to prevent the wrong done. See Lewis v. Casey, 518 U.S. 343 (1996).  "We have long

held that "[a]n injunction must be narrowly tailored to remedy the specific harm shown."

Nebraska Dep't. of Health and Human Services v. Dep't of Health and Human Services, 435

F.3d 326, 330 (D.C. Cir. 2006) (quoting Aviation Consumer Action Project v. Washburn, 535

F.2d 101, 108 (D.C. Cir. 1976)).  Thus, the greater the scope of relief demanded, the greater the

necessary showing to get it.  The breath of the relief plaintiffs seek increases the need for both

parties to gather information and that gathering, by necessity, takes time.  It is brutally unfair for

plaintiffs to increase the scope of relief they seek, but at the same time shorten the time WMATA

has to respond to their demands and to gather information that WMATA needs to defend itself.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for expedited discovery is denied.

**SO ORDERED.**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: