# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISABILITY RIGHTS COUNCIL OF GREATER WASHINGTON, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, *et al*.,<br><br>Defendants. | CA 04-0498 (HHK) (JMF) |

## PLAINTIFFS' MOTION TO COMPEL
## PRODUCTION OF ELECTRONIC DOCUMENTS

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiffs move for an order compelling disclosure of certain electronic documents held by defendant Washington Metropolitan Area Transit Authority ("WMATA"). As discussed below, WMATA's counsel recently revealed that WMATA failed to archive in a readily-accessible form relevant electronic documents written and received since the filing of this lawsuit by WMATA officials whose depositions have been noticed. These documents are on computer backup tapes, but WMATA refused to search those tapes without a court order. This motion seeks such an order.

### I.     BACKGROUND

####   A.     WMATA's Failure To Instruct Employees To Retain Documents

On June 9, 2006, Christian Kent testified as a Federal Rule of Civil Procedure 30(b)(6) designee regarding WMATA's creation and retention of documents related to the provision of MetroAccess services. Mr. Kent testified he was responsible for maintaining such documents:

-1-

> Q   Mr. Kent, we were talking about the maintenance of an[d] organization and retention of documents that pertain to the provision of MetroAccess service. Let me ask you specifically: Are you the person who is responsible for maintaining . . .documents that pertain to MetroAccess service?
>
> A   Yes. Yes. That's a fair statement, yeah.

Kent Tr. 149:3-11 (Corcoran Decl. Ex. A).[1]

Mr. Kent also testified that the WMATA computer system had an automatic 60-day function with respect to employee e-mails, as follows:

> Q   Let me rephrase it. You described that somehow the system prompts users every 60 days that they have an option of archiving or deleting e-mails; is that correct?
>
> A   Well, not entirely. What I said was that every user has the option to set those features as they wish. And when it first comes up, there is a -- there is a value already listed there before you -- before you make selection that that -- that does -- and I'm saying this from memory -- it either archives or deletes after 60 days. I remember the 60-day part. But I'm just saying that there is a setting with that comes with those accounts that does imply that the archiving is the -- is the preferred option, rather than to leave the messages all on the server indefinitely. But the user has the ability to choose how often that's done, and what manner it's done, and where that -- where the older information would be stored.

Kent Tr. 152:21 – 153:19 (Corcoran Decl. Ex. A).

Although this lawsuit had been pending for more than two years, Mr. Kent testified that he was unaware of any requirement to retain potentially responsive electronic and hard copy documents:

---

[1] A true and correct copy of the pertinent portion of this transcript, and other referenced materials, accompany this motion as exhibits to the Declaration of M. Evan Corcoran In Support of Plaintiffs' Motion to Compel Production of Electronic Documents.

> Q   As the person responsible for the maintenance of documents pertaining to MetroAccess services, are you aware of any communication that has been made to people who work for the MetroAccess office not to delete e-mails?
>
> A   No. It hasn't -- that subject hasn't come up at all, to my knowledge.
>
> Q   Are you aware of any direction to MetroAccess employees not to destroy hard copy documents that pertain to the provision of MetroAccess services?
>
> A   Subject hasn't come up.

Kent Tr. 153:20 – 154:9 (Corcoran Decl. Ex. A).

Mr. Kent further testified that he was unaware that WMATA employees had an obligation to preserve relevant electronic documents:

> Q   Well, I'm not asking about the intent of a staff member of the MetroAccess office. So let me give a different example. I'm trying to ascertain your understanding of what your obligations are as a person responsible for maintaining documents that pertain to MetroAccess services. If a member of your staff today decided that he or she wanted to clean up their "in" box, and simply went through and deleted all of their e-mails, do you believe that that is something that they properly could do?
>
> A   You know, that is a really hypothetical question. But I would just tell you this, that when you say proper, I take that to mean as – and you're asking me again in the context of my responsibility to keep information that is relevant to my obligation. I'm not monitoring what they save or don't save on their e-mail, because the contents thereof are not part of what I'm obligated to preserve. If they did delete it, I would certainly ask them why, because it would limit their ability to answer questions that I might want to put to them. But, you know, if it was important for me to include that as my area of responsibility that the content of their e-mails was that relevant and that -- that pertinent to our records retention policy, then I would have already given instruction and -- and perhaps even intervened in some way to make sure that the e-mail was set up so that that would not happen. And so since it isn't part of that obligation, you

-3-

> know, staff members, you know, are -- are not being, you
> know, asked to keep or not keep information on their e-
> mail. They're just required to respond to what comes to
> them through their e-mail.
>
> Q  So is it fair to say that during the course of the past year
> that you've been at Metro, MetroAccess staff members have
> been free to delete e-mails from their hard drives as they see
> fit?
>
> A  Yes. Because that -- because I'm not because I'm
> monitoring that.

Kent Tr. 157:19 – 159:18 (Corcoran Decl. Ex. A).

### B. Plaintiffs' Document Requests

On March 25, 2004, Plaintiffs brought this lawsuit, and alleged mismanagement by WMATA officials that resulted in harm to the Plaintiffs dating back to 2003 and continuing to date.[2]  Complaint ("Compl.") ¶ 126. In particular, the Complaint sought a declaratory judgment that WMATA's actions violated the Americans with Disabilities Act of 1990 ("ADA"), the Rehabilitation Act of 1973 ("Rehabilitation Act"), and 42 U.S.C. § 1983. Plaintiffs also sought an injunction ordering the end of such violations and the development of a remedial plan. Finally, Plaintiffs sought compensatory damages, fees and costs. On March 6, 2006, Plaintiffs filed a Second Amended Complaint ("2nd Compl.") which set forth additional allegations and added Daniel Tangherlini as a defendant in his official capacity as interim general manager of WMATA. 2nd Compl. ¶ 3.

On January 27, 2005, Plaintiffs served on WMATA Plaintiffs' Request For Production Of Documents To Defendant ("First Request") which sought, among other things, each and every "document containing WMATA policies and procedures pertaining to the provision of

---

[2]  *See* Compl. ¶ 126 ("Defendant has either intentionally discriminated against named and class plaintiffs or been deliberately indifferent to the strong likelihood that the pursuit of its policies would result in violations of federally protected rights.").

-4-

MetroAccess service," "report pertaining to MetroAccess service provided to the WMATA Board and to WMATA Senior management," "report concerning MetroAccess service prepared for external agencies," and "[a]ll correspondence between each external agency and WMATA concerning the findings and conclusions of each report, including all supporting documents and data." First Request at 3 (Corcoran Decl. Ex. B). The Request specifically defined "document" to include "electronic mail" and "computer discs." Id. at 2.

On February 24, 2005, Plaintiffs served Plaintiffs' Second Request For Production Of Documents To Defendant ("Second Request"). The Second Request sought, among other things, "[e]ach document relating to circulation of the RFP." Second Request at 3 (Corcoran Decl. Ex. C). Again, "document" was defined to include "electronic mail" and "computer disks." Id. at 2.

On February 27, 2006, Plaintiffs served Plaintiffs' Request For Expedited Production Of Documents To Defendant ("Expedited Request"). This Request sought, among other things, "[a]ll communications between or among WMATA, MV and LogistiCare, or internal to any of those entities, or any governmental entity or agency, relating to the transition of general contractor status, related operational problems, or the evaluation of performance of MV or any subcontractor since January 15, 2006." Expedited Request at 2-3 (Corcoran Decl. Ex. D).

On October 6, 2006, Plaintiffs served Plaintiffs' Third Request For Production Of Documents To Defendant ("Third Request"), which sought, among other things "[a]ll Documents discussing, referencing, relating to, or reflecting the number of paratransit vehicle dispatch personnel, including but not limited to those referencing the need for additional personnel" and "[a]ll Documents discussing, referencing, relating to, or reflecting the training of paratransit vehicle dispatch personnel, including but not limited to those referencing the need for additional training." Third Request at 5 (Corcoran Decl. Ex. E).

On October 20, 2006, WMATA requested that Plaintiffs agree that WMATA would have an extension until November 27, 2006, to respond to the Third Document Request. Plaintiffs agreed to this requested extension, on the condition that WMATA would provide Plaintiffs with the requested electronic documents for each deponent at least one week before that deponent's deposition. These depositions were scheduled to begin on November 9, 2006.

### C. Audit Prepared For WMATA Showed That MetroAccess Data Was Misstated And Inflated

One important aspect of discovery in this litigation is that information WMATA has provided to Plaintiffs has been inaccurate and misleading. For instance, WMATA provided Plaintiffs with MetroAccess daily reports, which purported to reflect such measures of performance as on-time performance, missed trips, and customer no-shows. An audit dated June 30, 2006, and prepared for WMATA by TranSystems Corporation, demonstrated that such information was misstated and inflated. As described in the Washington Post:

> The contractor in charge of Metro's troubled transportation service for people with disabilities overstated its on-time performance and undercounted the number of times riders were left stranded during its first several months of service, according to an independent audit. . . . [T]he data showed the contractor overstated on-time performance for the first seven months [of 2006] by 2.5 percentage points. . . .MV's final data showed the contractor undercounted the number of missed trips by about 10 percent overall from January to August.

Lena H. Sun, *Disabled Transit Data Was Misstated, MetroAccess Audit Shows Performance Numbers Inflated*, Washington Post, October 23, 2006, at http://www.washingtonpost.com/wp-dyn/content/article/2006/10/22/AR2006102200977.html (Corcoran Decl. Ex. F).

### D. WMATA's Refusal To Disclose Discoverable Electronic Documents

The parties scheduled the deposition of WMATA General Manager Daniel Tangherlini for November 9, 2006. When WMATA did not disclose Tangherlini's electronic documents one

-6-

week in advance of that date, as previously agreed, counsel for Plaintiffs contacted counsel for WMATA about this discovery deficiency.  On November 3, 2006, WMATA counsel responded in writing that "our position is that we are not willing to search his email absent a court order." (Corcoran Decl. Ex. G).

On November 7, 2006, counsel for Plaintiffs in good faith conferred with counsel for WMATA in an effort to secure the disclosure of these electronic documents without court action. *See* Fed. R. Civ. P. 37(a)(2)(A).  Counsel for WMATA would not agree to the requested disclosure without a court order.  In addition, counsel for WMATA stated that WMATA would *not* search for and disclose the electronic documents of 12 WMATA officials whose depositions had been scheduled.  In particular, WMATA counsel stated that:

- WMATA would not search the e-mails of six WMATA employees (Dan Tangherlini, Lucy Jackson, James Stewart, Pamela Wilkens, Lendy Castillo, and James Hughes), except for those e-mails that happened to remain in each employees current (not archived) inbox, which counsel indicated would be only e-mails that were less than 60 days old; and

- WMATA would not search the e-mails of WMATA employees in the MACS office (Michael Antique, Kebede Tadesse, Irving Frye, Rene Towns, Christian Kent, Steve Yaffe) that pre-dated a June 2006 directive that these employees archive their e-mails.

Thus, in effect, WMATA refused to disclose e-mails of six deponents and their predecessors that are more than 60 days old.  And WMATA refused to disclose e-mails of another six deponents and their predecessors that are older than June 2006, when WMATA belatedly instituted a document hold.  A meet-and-confer failed to resolve the dispute.[3]

---

[3] On November 13, 2006, WMATA counsel stated that WMATA would agree to "restore from backup tapes Dan Tangherlini's post office from the inception of his employment at WMATA and perform mutually agreeable searches for responsive documents in his email in return for ['Plaintiffs'] accepting the available archives from the Spring of 2006 for the remaining MACS personnel and the existing data for the other deponents." (Corcoran Decl. Ex. H).  Counsel also contended that certain electronic files of Mssrs. Kent and Yaffe had been archived and would be searched.  In short, WMATA offered to meet its discovery obligations with respect to 3 deponents, if Plaintiffs agreed that WMATA need not meet its discovery obligations for 9 other deponents.  Plaintiffs rejected this offer.

This motion followed. Because the need to involve the Court in this discovery dispute will necessarily delay the progress of depositions, Plaintiffs requested that WMATA agree to an expedited briefing schedule for this motion. Defendants rejected this request.

## II.     THE LEGAL STANDARD

The D.C. Circuit has explained that "[t]he Federal Rules of Civil Procedure encourage the exchange of information through broad discovery." *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004). Parties may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense, and relevant information need not be admissible at trial if it appears "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ P. 26(b)(1). This exchange of information requires a producing party "to search available electronic systems for the information demanded." *McPeek v. Ashcroft*, 202 F.R.D. 31, 32 (D.D.C. 2001). The party resisting discovery "bears the burden of demonstrating that the information sought is not legally relevant." *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 58 (D.D.C. 1984). In this inquiry, "[t]he concept of relevancy is broadly construed at the discovery stage of an action, and discovery rules are to be accorded liberal treatment." *Id.* at 59 n.3.

A party opposing production because it is purportedly burdensome has the burden of proving that the production sought is unreasonably burdensome or imposes an undue hardship. *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984); *Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002) (party opposing discovery "must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome"); *Wainwright v. WMATA*, 163 F.R.D. 391, 394 (D.D.C. 1995) (burden of showing undue hardship is on the party opposing discovery). Once litigation has commenced or is

reasonably anticipated, a party has a duty to preserve relevant documents, in both electronic and hard copy form. *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004). A party that "creates its own burden or expense by converting into an inaccessible format data that it should have reasonably foreseen would be discoverable material at a time when it should have anticipated litigation" may not shift the cost or expense to the requesting party. *Quinby v. WestLB AG*, No. 04-Civ-7406, 2006 U.S. Dist. LEXIS 64531, at *1, *29-30 (S.D.N.Y. Sept. 5, 2006).

**III.   ARGUMENT**

    **A.   WMATA Should Be Ordered To Disclose All Responsive E-Mails**

WMATA's obligation to search for and disclose responsive electronic documents is beyond dispute. The lawsuit squarely alleges mismanagement by WMATA officials in the operation of the MetroAccess program. For example, the communications among these officials and others that pertain to the provision of MetroAccess service are highly relevant to the claims alleged. In the circumstances here, where performance data that WMATA has made public was shown to be misstated and inflated by WMATA's own commissioned audit, such communications are even more important to the claims at issue. Accordingly, WMATA has not argued that the electronic discovery sought is irrelevant. WMATA merely argues that retrieval and disclosure of these electronic documents would be unduly burdensome. As discussed below, this contention is meritless.

    **B.   Because WMATA Failed To Ensure That Relevant Electronic Documents Were Being Stored In An Accessible Format, Its Burden Argument Must Be Rejected**

For more than two years while this lawsuit was pending, WMATA left it up to its employees to decide whether and how to preserve electronic documents that were relevant to the

claims in this lawsuit. During that time, WMATA failed to preserve electronic documents in a readily-accessible format, even while purporting to respond fully to document requests. Now, on the eve of scheduled depositions of a dozen key WMATA employees, WMATA has notified Plaintiffs that it would only conduct extremely limited searches of their electronic files. WMATA notified Plaintiffs that these electronic files were not being stored in a readily-accessible form – as they should have been all along in accordance with WMATA's discovery obligations – but were instead stored on computer backup tapes.

It matters not whether WMATA is in the current position because of negligence, or because it seeks an improper litigation advantage: WMATA cannot be allowed to avoid its most basic discovery obligations because it failed to take steps to preserve relevant electronic documents in an accessible format.

The nature of the documents at issue here does not change WMATA's discovery obligations. Upon service with the complaint, WMATA had an obligation to take affirmative steps to preserve relevant documents, both in hard copy and electronic form. WMATA should have instructed employees to save relevant hard copy documents in a file, so that they could readily be retrieved upon request in the litigation. So too with electronic documents. WMATA easily could have directed employees to save relevant electronic files in an electronic "folder," which would have ensured their preservation and allowed for efficient retrieval. Because WMATA did not do so, and allowed relevant electronic documents to be transferred to computer backup tapes, any cost associated with retrieval must be borne by WMATA.

WMATA argues that now it would be too expensive to retrieve electronic documents from the computer backup tapes. Such an argument should be rejected. For obvious reasons, were WMATA to prevail in its position, every litigant would have an incentive to try to shield

documents from disclosure by storing them in a manner such that retrieval is more difficult, and therefore more expensive.[4] *See Quinby*, *supra*, 2006 U.S. Dist. LEXIS 64531, at *29-30 ("[I]f a party creates its own burden or expense by converting into an inaccessible format data that it should have reasonably foreseen would be discoverable material at a time when it should have anticipated litigation, then it should not be entitled to shift the costs of restoring and searching the data.... [This] would prevent parties from taking unfair advantage of a self-inflicted burden by shifting part of the costs of undoing the burden to an adversary.")

## IV. CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion to compel, award the reasonable expenses incurred in making this motion, including attorneys' fees, and enter the accompanying order.

Respectfully submitted,

WILEY REIN & FIELDING LLP

   /s/
Todd A. Bromberg #472554
M. Evan Corcoran #440027
Keith Watson #140269
1776 K Street, NW
Washington, D.C. 20006
(202) 719-7000

WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
E. Elaine Gardner #271262
11 Dupont Circle, NW, Suite 400
Washington, D.C. 20036
(202) 319-1000

November 15, 2006                              Attorneys for Plaintiffs

---

[4] Plaintiffs reserve the right to seek sanctions for the failure to preserve and produce electronic documents, which sanctions may include an adverse inference jury instruction and the disallowance of certain defenses.

-12-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 15th day of November 2006, service of the foregoing **Plaintiffs' Motion To Compel Production Of Electronic Documents** has been made by ECF to:

Bruce P. Heppen
David Shaffer
Washington Metropolitan Area Transit Authority
600 Fifth Street, NW
Washington, DC  20001

                                       By:   /s/ M. Evan Corcoran
                                             M. Evan Corcoran No. 440027