**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DISABILITY RIGHTS COUNCIL OF GREATER
WASHINGTON, *et al.*,

              Plaintiffs,

v.                                      CA 04-0498 (HHK/JMF)

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, *et al.*,

              Defendants.

## DECLARATION OF M. EVAN CORCORAN IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF ELECTRONIC DOCUMENTS

I, M. Evan Corcoran, hereby declare:

1.     I am counsel for Plaintiffs in the above-captioned action.

2.     True and correct copies of the documents described below are attached as the following exhibits to this affidavit.

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Excerpts from the deposition of Christian Kent, dated June 9, 2006 |
| B | Excerpts from Plaintiffs' Request For Production Of Documents To Defendant, dated January 27, 2005 |
| C | Excerpts from Plaintiffs' Second Request For Production Of Documents To Defendant, dated February 24, 2005 |
| D | Excerpts from Plaintiffs' Request For Expedited Production Of Documents To Defendant, dated February 27, 2006 |
| E | Excerpts from Plaintiffs' Third Request For Production Of Documents To Defendant, dated October 6, 2006 |

| F | Article by Lena H. Sun, Washington Post, dated October 23, 2006 |
|---|---|
| G | Email from David Shaffer to Evan Corcoran, dated November 3, 2006 |
| H | Email from David Shaffer to Keith Watson, dated November 13, 2006 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Washington, D.C. this 15th day of November 2006.

M. Evan Corcoran

# EXHIBIT A

**Capital Reporting Company**

Page 1

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
2
      - - - - - - - - - - - - - - - x
3     DISABILITY RIGHTS COUNCIL,     :
      OF GREATER WASHINGTON, et al.,:
4                                     :
              Plaintiffs,             :
5                                     :
                    v.                : Case No. 1:04-CV-0498
6                                     :
      WASHINGTON METROPOLITAN AREA     :
7     TRANSIT AUTHORITY,              :
                                      :
8             Defendant.              :
      - - - - - - - - - - - - - - - x
9

10                                    Washington, D.C.

11                                    Friday, June 9, 2006

12    30(b)(6) Deposition of:

13                    CHRISTIAN KENT,

14    Called for examination by counsel for the Plaintiffs,

15    pursuant to notice, at the Law Offices of Wiley Rein &

16    Fielding, 1776 K Street, N.W., Washington, D.C.,

17    before Barbara A. Huber of Capital Reporting, a Notary

18    Public in and for the District of Columbia, beginning

19    at 10:00 a.m., when were present on behalf of the

20    respective parties:

21

22
```

ORIGINAL

**Capital Reporting Company**

Page 2

1    APPEARANCES:

2       On behalf of Plaintiffs:

3          M. EVAN CORCORAN, ESQUIRE
           MARY VIRGINIA MANGUM, ESQUIRE
4          JODY SCHWARZ, ESQUIRE
           Wiley Rein & Fielding, LLP
5          1776 K Street, N.W.
           Washington, D.C. 20006
6          (202) 719-7049
           ecorcora@wrf.com
7
        On behalf of Defendant:
8
           DAVID J. SHAFFER, ESQUIRE
9          BRUCE P. HEPPEN, ESQUIRE
           Office of General Counsel
10         Washington Metropolitan Area Transit Authority
           600 Fifth Street, N.W.
11         Washington, D.C. 20001
           (202) 962-2820
12         dshaffer@wmata.com

13      Also Present:

14         Laura Matter
           Jacinda Lanum
15         Fred Wolf

16

17                      *   *   *   *   *

18

19

20

21

22

Capital Reporting Company

Page 3

```
 1                    C O N T E N T S

 2    EXAMINATION BY:                              PAGE

 3         Counsel for Plaintiffs                     4

 4

 5

 6

 7    DEPOSITION EXHIBITS:                         PAGE

 8    1 - Notice of Deposition                        5

 9    2 - MetroAccess Daily Report, June 8, 2006    196

10    3 - MetroAccess Customer Guide                219

11

12

13

14

15

16

17

18

19

20

21

22
```

Page 4

```
 1                  P R O C E E D I N G S
 2   WHEREUPON,
 3                    CHRISTIAN KENT,
 4   Called as a witness, and having been first duly sworn,
 5   was examined and testified as follows:
 6                  EXAMINATION BY COUNSEL FOR PLAINTIFFS
 7   BY MR. CORCORAN:
 8       Q    Sir, my name is Evan Corcoran.  And I
 9   represent the Plaintiffs in this action.
10              Please state your name and spell it for
11   the record.
12       A    My name is Christian Kent,
13   C-H-R-I-S-T-I-A-N, K-E-N-T.
14       Q    Mr. Kent, what's your current mailing
15   address, home address?
16       A    Home address, okay, is 1320 North Veitch
17   Street, spelled V-E-I-T-C-H, Apartment 1603, in
18   Arlington, Virginia 22201.
19       Q    What's your date of birth?
20       A    December 18th, 1967.
21              MR. CORCORAN:  Okay.  Let me have marked
22   what will be Exhibit Number 1.
```

Page 149

1                        discussion was held.)

2    BY MR. CORCORAN:

3        Q     Mr. Kent, we were talking about the

4    maintenance of an organization and retention of

5    documents that pertain to the provision of

6    MetroAccess service.

7              Let me ask you specifically:  Are you

8    the person who is responsible for maintaining of

9    documents that pertain to MetroAccess service?

10       A     Yes.  Yes.  That's a fair statement,

11   yeah.

12       Q     There is at Metro a policy that's in

13   affect for the public access to records; is that

14   correct?

15       A     Yes, there is, uh-huh.

16       Q     And in connection with that policy, is

17   it accurate to say that an individual within each

18   department is designated as the person who is

19   responsible for taking custody of documents that

20   might be requested by the public?

21       A     Yes.

22       Q     Within the MetroAccess office, are you

## Capital Reporting Company

1    Mr. Antique, who audits the billing information.

2    And he has -- he has periodically made requests of

3    the contractor to see different -- you know,

4    different items, different documents from time to

5    time to facilitate either, you know, backing up,

6    you know, an invoice or following up on a customer

7    service issue.

8            You know, our staff from time to time

9    requests the information.  But there's -- there's

10   not been any discussion of -- of retention of the

11   documents, because they're -- like I said, at the

12   moment, everything is still in process.

13   Nothing -- nothing has yet been stored.  It's

14   being gathered.  But it hasn't been archived or

15   put away yet.

16       Q    You described, with respect to e-mail, a

17   process by which users in the MetroAccess office

18   can either archive or delete e-mails at 60-day

19   intervals --

20       A    Or other.

21       Q    Let me rephrase it.

22            You described that somehow the system

**Capital Reporting Company**

Page 153

1   prompts users every 60 days that they have an

2   option of archiving or deleting e-mails; is that

3   correct?

4        A    Well, not entirely.  What I said was

5   that every user has the option to set those

6   features as they wish.  And when it first comes

7   up, there is a -- there is a value already listed

8   there before you -- before you make selection that

9   that -- that does -- and I'm saying this from

10  memory -- it either archives or deletes after 60

11  days.  I remember the 60-day part.

12            But I'm just saying that there is a

13  setting with that comes with those accounts that

14  does imply that the archiving is the -- is the

15  preferred option, rather than to leave the

16  messages all on the server indefinitely.  But the

17  user has the ability to choose how often that's

18  done, and what manner it's done, and where that --

19  where the older information would be stored.

20       Q    As the person responsible for the

21  maintenance of documents pertaining to MetroAccess

22  services, are you aware of any communication that

Page 154

1    has been made to people who work for the

2    MetroAccess office not to delete e-mails?

3         A    No.  It hasn't -- that subject hasn't

4    come up at all, to my knowledge.

5         Q    Are you aware of any direction to

6    MetroAccess employees not to destroy hard copy

7    documents that pertain to the provision of

8    MetroAccess services?

9         A    Subject hasn't come up.

10        Q    Are you aware of any directive to

11   MetroAccess staff that they are not to delete

12   voice mail messages that may pertain to the

13   provision of MetroAccess services?

14        A    No.  And, you know, I think that, you

15   know, we're -- we're mixing these questions with

16   what is required to be kept.  You know, voice

17   mails and e-mails are not -- at least not

18   contractually defined pieces of information that

19   our policies I think would necessarily govern, you

20   know.

21             Because when we are speaking of records

22   that have to do with the provision of service, I

## Capital Reporting Company

Page 157

1    there is the overall mission to capture all of the

2    customer -- or communications.

3            If it also happens to be represented in

4    one of my staff's e-mails, and let's say that they

5    don't retain their e-mails as meticulously as I

6    do.  You know, as long as the information resides

7    where it's supposed to in our database, where the

8    information belongs, and where all of the related

9    customer data is kept, then we have still

10   accomplished retaining the information per our

11   obligation.

12           So, you know, I couldn't speculate, you

13   know, as to the intent of what a person -- you

14   know, that -- that if -- if a person's e-mail is

15   not as -- as replete with information as mine is,

16   you know, I don't know that I would jump to the

17   conclusion that there was a deliberate effort to

18   not retain information.

19       Q    Well, I'm not asking about the intent of

20   a staff member of the MetroAccess office.  So let

21   me give a different example.  I'm trying to

22   ascertain your understanding of what your

1    obligations are as a person responsible for

2    maintaining documents that pertain to MetroAccess

3    services.

4            If a member of your staff today decided

5    that he or she wanted to clean up their "in" box,

6    and simply went through and deleted all of their

7    e-mails, do you believe that that is something

8    that they properly could do?

9        A    You know, that is a really hypothetical

10   question.  But I would just tell you this, that

11   when you say proper, I take that to mean as -- and

12   you're asking me again in the context of my

13   responsibility to keep information that is

14   relevant to my obligation.  I'm not monitoring

15   what they save or don't save on their e-mail,

16   because the contents thereof are not part of what

17   I'm obligated to preserve.

18           If they did delete it, I would certainly

19   ask them why, because it would limit their ability

20   to answer questions that I might want to put to

21   them.  But, you know, if it was important for me

22   to include that as my area of responsibility that

## Capital Reporting Company

Page 159

1  the content of their e-mails was that relevant and

2  that -- that pertinent to our records retention

3  policy, then I would have already given

4  instruction and -- and perhaps even intervened in

5  some way to make sure that the e-mail was set up

6  so that that would not happen.

7       And so since it isn't part of that

8  obligation, you know, staff members, you know,

9  are -- are not being, you know, asked to keep or

10  not keep information on their e-mail.  They're

11  just required to respond to what comes to them

12  through their e-mail.

13     Q    So is it fair to say that during the

14  course of the past year that you've been at Metro,

15  MetroAccess staff members have been free to delete

16  e-mails from their hard drives as they see fit?

17     A    Yes.  Because that -- because I'm not --

18  because I'm monitoring that.

19     Q    And is it also fair to say that during

20  the past year MetroAccess staff members have been

21  free to throw out hard copy documents that they

22  may have in their files?

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DISABILITY RIGHTS COUNCIL OF GREATER WASHINGTON, 11 Dupont Circle, NW, Suite 400 Washington, DC 20036, _et al.,_ | |
| Plaintiffs, | CA 04-0498 (HKH) |
| v. | |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, 600 Fifth St., NW Washington, DC 20001 | |
| Defendant. | |

**PLAINTIFFS' REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENANT**

Plaintiffs hereby request that Defendant produce and permit inspection and copying by or on behalf of Plaintiffs of each of the following documents or categories of documents in Defendant's possession, custody or control at the office of WILEY, REIN & FIELDING, 1776 K Street, NW, Washington, DC 20006 within 30 days of the date they are served. These requests are to be construed in light of the Complaint and Answer. Defendant is requested to produce documents labeled to correspond to the Request for which they are submitted. If any documents fall within a Request, but are not produced, Defendant should submit a list of such documents on the date of the document production stating why the documents were not produced, and listing the date, author, recipient(s), type, nature, source, and general subject matter of each document not produced.

Any documents withheld from production on the basis of privilege are to be identified and described, and the nature of the assertion of privilege stated, in a manner that will enable counsel and the court to fully and properly assess the applicability of such privilege.

## DEFINITIONS

1.      "WMATA" shall mean Washington Metropolitan Area Transit Authority.

2.      "ADA" shall mean the Americans with Disabilities Act of 1990.

3.      "Document" or "Documents" shall mean, unless otherwise indicated, the original copies of any written, typed, printed, photocopied, photographic or tape recorded matter of any kind, no matter haw produced, recorded, stored, or reproduced including but not limited to all letters, correspondence, electronic mail ("E-mail"), books, periodicals, contracts, telegrams, paper communications, tabulations, charts, memoranda, handwritten notes, drafts, records or transcriptions by a mechanical device, by longhand or shorthand recording, tape recorder or by any other means, computer discs, interoffice communications, microfilm, lists, bulletins, calendars, circulars, desk pads, ledgers, minutes, journals, diaries, invoices, balance sheets, profit and loss statements, pamphlets, studies, notices, summaries, reports, analyses, teletype messages, worksheets and all other graphic materials, writings and instruments however produced or reproduced.  Said definition shall include, inter alia recordings, transcripts and/or summaries or oral communications, telephonic or otherwise.

4.      The time period for each Request is limited to January 1, 2003 to the present. Plaintiffs reserve the right to modify this time period.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Each and every contract pertaining to the provision of WMATA's ADA Paratransit Services (referred to as MetroAccess), including all appendices, amendments, modifications and change orders. This request includes but is not limited to all subcontracts for services and equipment used in MetroAccess operations.

2.      User manuals for all of the software installed for the telephone answering system, client eligibility and registration processing, trip reservations and scheduling, dispatching and the mobile data computer (MDC)/automated vehicle location (AVL) systems.

3.      Each and every document containing WMATA policies and procedures pertaining to the provision of MetroAccess service including, but not limited to, client eligibility and registration processes, trip reservations and scheduling, early and late cancellations, response to calls about "Where's my ride?" no-shows, late trips, missed trips, back-up service to minimize late and missed trips, on-street service monitoring, and complaint handling and resolution.

4.      Each and every report pertaining to MetroAccess service provided to the WMATA Board and to WMATA Senior Management, including but not limited all regular weekly or monthly reports.

5.      Minutes of meetings of the committee(s) responsible for ADA issues at WMATA.

6.      Each and every report concerning MetroAccess service prepared by consulting firms under contract to WMATA.

7.      Each and every report concerning MetroAccess service prepared for external agencies, including but not limited to the Federal Transit Administration (FTA).

8.      All correspondence between each external agency and WMATA concerning the findings and conclusions of each report, including all supporting documents and data.

9.      All reports and data tabulations used to monitor and manage the following performance attributes of MetroAccess service:

- Telephone Access (by purpose of call)
- On-Time Performance
- Late Trips (including time intervals used to measure lateness)
- Missed Trips
- Travel Time (including comparisons to fixed route travel times)
- Passenger complaints about late trips and poor service

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DISABILITY RIGHTS COUNCIL OF GREATER WASHINGTON, 11 Dupont Circle, NW, Suite 400 Washington, DC  20036, _et al.,_<br><br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, 600 Fifth St., NW Washington, DC 20001<br><br>Defendant. | CA 04-0498 (HKH) |

**PLAINTIFFS' REQUEST FOR PRODUCTION**
**OF DOCUMENTS TO DEFENANT**

Plaintiffs hereby request that Defendant produce and permit inspection and copying by or on behalf of Plaintiffs of each of the following documents or categories of documents in Defendant's possession, custody or control at the office of WILEY, REIN & FIELDING, 1776 K Street, NW, Washington, DC 20006 within 30 days of the date they are served.  These requests are to be construed in light of the Complaint and Answer.  Defendant is requested to produce documents labeled to correspond to the Request for which they are submitted.  If any documents fall within a Request, but are not produced, Defendant should submit a list of such documents on the date of the document production stating why the documents were not produced, and listing the date, author, recipient(s), type, nature, source, and general subject matter of each document not produced.

Any documents withheld from production on the basis of privilege are to be identified and described, and the nature of the assertion of privilege stated, in a manner that will enable counsel and the court to fully and properly assess the applicability of such privilege.

## DEFINITIONS

1.    "WMATA" shall mean Washington Metropolitan Area Transit Authority.

2.    "ADA" shall mean the Americans with Disabilities Act of 1990.

3.    "Document" or "Documents" shall mean, unless otherwise indicated, the original copies of any written, typed, printed, photocopied, photographic or tape recorded matter of any kind, no matter haw produced, recorded, stored, or reproduced including but not limited to all letters, correspondence, electronic mail ("E-mail"), books, periodicals, contracts, telegrams, paper communications, tabulations, charts, memoranda, handwritten notes, drafts, records or transcriptions by a mechanical device, by longhand or shorthand recording, tape recorder or by any other means, computer discs, interoffice communications, microfilm, lists, bulletins, calendars, circulars, desk pads, ledgers, minutes, journals, diaries, invoices, balance sheets, profit and loss statements, pamphlets, studies, notices, summaries, reports, analyses, teletype messages, worksheets and all other graphic materials, writings and instruments however produced or reproduced.  Said definition shall include, inter alia recordings, transcripts and/or summaries or oral communications, telephonic or otherwise.

4.    The time period for each Request is limited to January 1, 2003 to the present. Plaintiffs reserve the right to modify this time period.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All backup data used in the preparation of each document requested pursuant to Defendants Requests for Production Nos. 3 and 9.

2.     Each document relating to circulation of the RFP, including but not limited to requests for comment and submissions to other transit agencies.

Respectfully submitted,

_____ /s/ Todd A. Bromberg_____
Thomas W. Brunner (D.C. Bar No. 170480)
Todd A. Bromberg (D.C. Bar No. 472554 )
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC 20006
TEL:   202-719-7000

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DISABILITY RIGHTS COUNCIL OF GREATER
WASHINGTON,

                  Plaintiffs,

           v.

                CA 04-0498 (HKH) (JMF)

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

                Defendant.

## PLAINTIFFS' REQUEST FOR EXPEDITED PRODUCTION
## OF DOCUMENTS TO DEFENDANT

      Plaintiffs hereby request that Defendant produce and permit inspection and copying by

or on behalf of Plaintiffs of each of the following documents or categories of documents in

Defendant's possession, custody or control at the office of WILEY, REIN & FIELDING,

1776 K Street, NW, Washington, DC 20006 **on an expedited basis on before March 9,**

**2006**. These requests are to be construed in light of the Complaint and Answer.  Defendant is

requested to produce documents labeled to correspond to the Request for which they are

submitted.  If any documents fall within a Request, but are not produced, Defendant should

submit a list of such documents on the date of the document production stating why the

documents were not produced, and listing the date, author, recipient(s), type, nature, source,

and general subject matter of each document not produced.

      The definitions set forth in Plaintiffs' Request for Production of Documents, dated

January 27, 2005, are incorporated herein.  LogistiCare Inc. is defined as LogistiCare; MV

Transportation, Inc. is defined as  MV.

Any documents withheld from production on the basis of privilege are to be identified and described, and the nature of the assertion of privilege stated, in a manner that will enable counsel and the court to fully and properly assess the applicability of such privilege.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All documents relating to the development and implementation of performance standards and statistics under the current MV contract, including but not limited to all definitions and methodologies utilized to calculate such performance standards and statistics.

2.    All statistical reports and data prepared or maintained within WMATA or MV since MV began its involvement in MetroAccess operations reflecting MV's performance, including but not limited to:

   (a)    Number of trips: (i) requested; (ii) completed; (iii) scheduled but not completed as a result of MV's failure or inability to complete the trip; or (iv) scheduled but not completed due to passenger failure or inability to complete the trip.

   (b)    All electronic data that is prepared in the normal course of business by MV (e.g., Trapeze Software) in the form that it is collected and/or reported: (i) prior to any reconciliation process; (ii) after any reconciliation process; and (iii) directly uploaded from each vehicle via any global positioning system (e.g., MDT).

   (c)    The number of rides dispatched and vehicles used to provide transportation due to rides that are not completed as initially scheduled as a result of MV's failure or inability to complete a trip.  (e.g., recovery or backup service).

   (d)    The number of scheduled trips provided by each subcontractor of MV.

3.    All communications between or among WMATA, MV and LogistiCare, or internal to any of those entities, or any governmental entity or agency, relating to the

2

transition of general contractor status, related operational problems, or the evaluation of performance of MV or any subcontractor since January 15, 2006, including but not limited to all documents related to the need for additional vehicles, staff, communications, or other resources to improve MetroAccess service.

4.      All complaints received since April 2005 regarding MetroAccess, including but not limited to any investigations or findings related to such complaints (e.g., investigations by the MetroAccess critical trip management team).

5.      All documents that reflect the number of passengers who have suspended their subscription to MetroAccess service, or otherwise indicate an intention to stop using the service, in each month since April 2005.

6.      All Documents that substantiate the assertions by former WMATA General Manager White and others that such complaints were or are falsified.

7.      All documents that support or relate WMATA's contention (if it so contends) that WMATA's on-time rates for other services (bus or Metrorail) are relevant to evaluating MetroAccess performance.

8.      All Documents relating to the decision to award that contract to MV, and any bid protests filed by would-be MetroAccess general contractors other than MV.

9.      All Documents reflecting the recent terminations of MV as the paratransit general contractor in Merced and Riverside, California.

Dated: February 27, 2006

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DISABILITY RIGHTS COUNCIL OF GREATER
WASHINGTON,
11 Dupont Circle, NW, Suite 400
Washington, DC 20036, *et al.,*

                          **Plaintiffs,**

        v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,
600 Fifth St., NW
Washington, DC 20001

                        Defendant.

CA 04-0498 (HHK)(JMF)

## PLAINTIFFS' THIRD REQUEST FOR PRODUCTION
## OF DOCUMENTS TO DEFENDANT

Plaintiffs hereby request that Defendant produce and permit inspection and copying by or on behalf of Plaintiffs of each of the following documents or categories of documents in Defendant's possession, custody or control at the office of WILEY, REIN & FIELDING, 1776 K Street, NW, Washington, DC 20006 within 30 days of the date they are served. These requests are to be construed in light of the Complaint and Answer. Defendant is requested to produce documents labeled to correspond to the Request for which they are submitted. If any documents fall within a Request, but are not produced, Defendant should submit a list of such documents on the date of the document production stating why the documents were not produced, and listing the date, author, recipient(s), type, nature, source, and general subject matter of each document not produced. Documents previously produced to Plaintiffs in this Action need not be produced or so listed.

4.      All Documents discussing, referencing, relating to, or reflecting the actual or average number of paratransit runs and/or pick-ups managed by each dispatch person each day.

5.      All Documents discussing, referencing, relating to, or reflecting the number of paratransit vehicle dispatch personnel, including but not limited to those referencing the need for additional personnel.

6.      All Documents discussing, referencing, relating to, or reflecting the training of paratransit vehicle dispatch personnel, including but not limited to those referencing the need for additional training.

7.      All Documents discussing, referencing, relating to, or reflecting customer telephone "hold" times to speak to "live" personnel to make telephone reservations, inquiries, or complaints regarding paratransit service.

8.      All Documents discussing, referencing, relating to, or reflecting the number of personnel to handle telephone reservations, inquiries, or complaints regarding paratransit service, including but not limited to those referencing the need for additional personnel.

9.      All Documents discussing, referencing, relating to, or reflecting the training of personnel to handle telephone reservations, inquiries, or complaints regarding paratransit service, including but not limited to those referencing the need for additional training.

10.     All Documents discussing, referencing, relating to, or reflecting the reconciliation of information and data used to calculate the on-time performance of paratransit vehicles.

# EXHIBIT F

Case 1:04-cv-00498-HHK   Document 121-1   Filed 11/15/06   Page 31 of 36
Disabled Transit Data Was Misstated - washingtonpost.com
Page 1 of 2

# washingtonpost.com

## Disabled Transit Data Was Misstated

MetroAccess Audit Shows Performance Numbers Inflated

Advertisement

By Lena H. Sun
Washington Post Staff Writer
Monday, October 23, 2006; B01

The contractor in charge of Metro's troubled transportation service for people with disabilities overstated its on-time performance and undercounted the number of times riders were left stranded during its first several months of service, according to an independent audit.

MetroAccess's "on-time" goal is to have at least 93.5 percent of all scheduled trips be picked up within a 30-minute window, but the contractor failed to achieve that target in each of the first six months of the year. Its performance showed steady improvement, however, from a low of 84.2 percent in January to 94 percent in August.

The audit corroborates many of the problems that MetroAccess riders have complained about since January, when MV Transportation took over the service. The report is the latest assessment to say Metro and MV need better oversight to properly manage the curb-to-curb service. The audit, by TranSystems Corp., also raises questions about MV's ability to provide timely, accurate data.

"This report underscores the importance of our key recommendations: that Metro needs to strengthen its contract oversight and monitoring," said Wendy Klancher, a transportation planner and member of a MetroAccess advisory group.

The report, which has not been released publicly, highlights the latest problems for one of Metro's most costly and difficult services. The previous MetroAccess provider, LogistiCare Inc., received bonuses for questionable performance data even as riders complained about missed and late trips. So Metro sought a new contractor and MV was signed last year to a four-year, $204 million deal, the lowest bid. But transit directors have since questioned whether they are getting what they want, rather than what they paid for.

"I think we have come to realize that the contract we bid and the service we want to provide are two different things," said Dan Tangherlini, Metro's interim general manager. "The original deal was focused on cost reduction, not service provision."

TranSystems observed MV's recordkeeping and reporting procedures in mid-May and reviewed months of daily service reports. Those reports, which were preliminary and incomplete, "appear to overstate on-time performance by about 2 - 5 percent" from January through May, the audit says.

After MV did a final scouring of the reports, the data showed the contractor overstated on-time performance for the first seven months by 2.5 percentage points. MetroAccess provides about 100,000 trips each month. Using the preliminary data, the consultant also said MV was undercounting the number of missed trips -- vehicle no-shows -- by as much as half. MV's final data analysis showed the contractor undercounted the number of missed trips by about 10 percent overall from January to August. Instead of an average 1,309 missed trips per month using the tentative numbers, the final numbers showed 1,444 missed trips per month, Metro officials said.

The report "identified a lot of areas where there are a lot of questions," said Steve Yaffe, Metro's chief operating officer for community transportation. Since August, Metro and MV have put new procedures in place to make sure trips are accurately reported and recorded, he said.

About 16,000 disabled riders who are physically unable to take the subway or bus depend on MetroAccess. About 80 percent of rides are provided by MV and four subcontractors. The remaining 20 percent are delivered by another group of subcontractors and taxicab companies.

In some cases, the auditor found that missed trips by taxis were being improperly recorded. They showed up in MV's database as on-time pickups because MV dispatchers had scheduled new trips to replace missed ones. In other instances, trips that appeared to be "missed" showed up in the database as "no-shows," unfairly marking passengers and jeopardizing their future service.

These practices are no longer in use, Yaffe said. Additionally, Metro and MV have tightened monitoring by comparing electronic records with drivers' daily trip logs, auditing taxicab payment vouchers and sending street supervisors to spot-check performance.

After MV took over the service in January, Metro was flooded with complaints about missed or late trips and rides that zigzagged across the region because reservationists typed in the right street addresses but the wrong towns.

The company was assessed $227,500 in penalties from April to July for missing performance goals in several areas, including missed and late trips, customer complaints, and telephone response times.

Metro and MV replaced key staff, and an advisory group was established to recommend changes, some of which were put into effect. Over the summer, some riders said service had improved noticeably.

But in recent weeks, with increased fall ridership and high staff turnover at MV, riders are again complaining about missed and late trips and routing that defies common sense.

A few weeks ago, Nancy Hartgrove was picked up from her Silver Spring home and taken past her office at 17th and M streets NW to drop off another passenger in Southwest Washington before being taken to her building.

"Whoever is programming these computers doesn't know how these areas are set up," said Hartgrove, 59.

Scheduling remains a problem, Yaffe acknowledged. Metro is working with MV so that trips are scheduled so "the human rules the computer," he said. But, he added: "It's not going to happen overnight."

MV's five schedulers typically manage 70 to 125 "runs," or the list of a driver's trips. That amounts to double or triple the industry "best practice," industry experts say. That means schedulers spend most of their time dealing with the basic task of getting someone a ride. They don't have time or proper training to do difficult types of scheduling, such as looking for patterns from one geographical area to another that can then be grouped together more efficiently, Yaffe said.

© 2006 The Washington Post Company

**Ads by Google**

**What's your Credit Score?**
677? 720? 598? The cost to see yours: $0
www.FreeCreditReport.com

# EXHIBIT G

## Corcoran, Evan

| | |
|---|---|
| **From:** | David Shaffer [dshaffer@wmata.com] |
| **Sent:** | Friday, November 03, 2006 5:20 PM |
| **To:** | Corcoran, Evan |
| **Cc:** | Bruce P. Heppen; Latimer, Hugh; Watson, Keith; Bromberg, Todd; Brunner, Thomas |
| **Subject:** | Re: MetroAccess - Tangherlini Documents |

With respect to Tangherlini, we believe the burden of production far outweighs any benefit. Any MetroAccess email that he would generate or receive would be picked up in the Kent, Yaffe or other MetroAccess employees' emails. Therefore, our position is that we are not willing to search his email absent a court order. We are taking steps to preserve his computer records; thus the issue is one of production, not preservation. We want to remind you that after this week we are dubious about our ability to compel Mr. Tangherlini's attendance at a deposition because of the demands upon his time in his new position as city administrator.

David J. Shaffer
Assistant General Counsel
Washington Metropolitan Area Transit Authority 600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-2820
fax: (202) 962-2550
dshaffer@wmata.com

THIS E-MAIL MESSAGE IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE OF THE RECIPIENT NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE NAMED RECIPIENT, OR THE AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, YOU ARE NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF THIS INFORMATION COMMUNICATION IS STRICTLY PROHIBITED AND NO PRIVILEGE IS WAIVED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY THE ABOVE-NAMED INDIVIDUAL IMMEDIATELY, COLLECT IF NECESSARY.

>>> "Corcoran, Evan" <ECorcoran@wrf.com> 11/03/06 4:04 PM >>>
David:

The Tangherlini deposition is scheduled for Thursday, November 9, 2006.
You have agreed to provide each deponent's e-mails at least one week before his or her deposition.  We have not received the Tangherlini e-mails.  Please advise me in writing whether we will receive the Tangherlini e-mails by close of business Monday.

I am informed that you have stated that you do not believe you have an obligation to search for responsive documents among Tangherlini's e-mails.  We believe that the Federal Rules of Civil Procedure do require such production.  Please advise us of your position as soon as possible, because I believe that this may be an issue that will require resolution by the magistrate judge.

Thank you.

M. Evan Corcoran

NOTICE: This message (including any attachments) from Wiley Rein & Fielding LLP may constitute an attorney-client communication and may contain information that is PRIVILEGED and CONFIDENTIAL and/or ATTORNEY WORK PRODUCT. If you are not an intended recipient, you are hereby notified that any dissemination of this message is strictly prohibited. If you have received this message in error, please do not read, copy or forward this message. Please permanently delete all copies and any attachments and notify the sender immediately by reply email or by calling our Administrative Office at 202.719.7201. Thank You.

# EXHIBIT H

**Corcoran, Evan**

| | |
|---|---|
| **From:** | David Shaffer [dshaffer@wmata.com] |
| **Sent:** | Monday, November 13, 2006 11:42 AM |
| **To:** | Watson, Keith |
| **Cc:** | Bruce P. Heppen; Corcoran, Evan; Bromberg, Todd |
| **Subject:** | Re: MetroAccess discovery |

I know for sure that Kent and Yaffe have been archiving since the inception of their
employment.  Prior to the beginning of this year, there were 33 post offices. They have
since been consolidated into 4
very large post offices.   We do not yet know who was on which post
office, but the task of restoring them (both before and after the
consolidation)  is very burdensome since a different backup tape exists for each month for
each post office.  In order to avoid burdensome discovery and motions practice, I can
offer the following compromise:
We will restore from backup tapes Dan Tangherlini's post office from the inception of his
employment at WMATA and perform mutually agreeable searches for responsive documents in
his email in return for your accepting the available archives from the Spring of 2006 for
the remaining MACS personnel and the existing data for the other deponents.

With respect to the other issues in your email, we produced the Best Practices report in
the group of document 11168 through 11208.  We are searching for the Tangherlini memo you
referenced and will supply it if we can locate it, although we've been searching all
morning for it without success.

Lastly, I note that  we could proceed with Knapp, Kent and Yaffe as well as Jackson.   I
suggest that we look at the week after Thanksgiving and the first week in December, since
if you do not chose to accept our compromise it will take several weeks to get your
discovery motion briefed and decided.

David J. Shaffer
Assistant General Counsel
Washington Metropolitan Area Transit Authority 600 Fifth Street, N.W.
Washington, D.C. 20001
(202) 962-2820
fax: (202) 962-2550
dshaffer@wmata.com

THIS E-MAIL MESSAGE IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR THE USE
OF THE RECIPIENT NAMED ABOVE.  IF THE READER OF THIS MESSAGE IS NOT THE NAMED RECIPIENT,
OR THE AGENT RESPONSIBLE TO DELIVER IT TO THE NAMED RECIPIENT, YOU ARE NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION, COPYING OR OTHER USE OF THIS INFORMATION COMMUNICATION IS
STRICTLY PROHIBITED AND NO PRIVILEGE IS WAIVED.  IF YOU HAVE RECEIVED THIS COMMUNICATION
IN ERROR, PLEASE NOTIFY THE ABOVE-NAMED INDIVIDUAL IMMEDIATELY, COLLECT IF NECESSARY.