UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
DISABILITY RIGHTS COUNCIL     )
OF GREATER WASHINGTON, et al.,   )
)
     Plaintiffs,      )
)
     v.      )     Civil Action No. 04-498 (HHK/JMF)
)
WASHINGTON METROPOLITAN   )
TRANSIT AUTHORITY, et al.,    )
)
     Defendants.    )
_____)

MEMORANDUM OPINION

This case was referred to me for resolution of discovery disputes.  Currently pending before me for resolution are <u>Defendants' Motion to Compel Production of Documents</u> ("Defs. Mot. Comp.") [#110]; <u>Plaintiffs' Motion to Compel Production of Electronic Documents</u> ("Pls. Mot. Comp.") [#121]; <u>Defendants' [Second] Motion to Compel Production of Documents</u> ("Defs. Mot. Comp. #2") [#134]; and <u>Plaintiffs' Motion Regarding Adams Deposition</u> ("Pls. Mot. Dep.") [#145].  For the reasons stated herein, Defendants' first motion to compel and Plaintiffs' motion regarding the deposition will be denied; Plaintiffs' motion to compel and Defendants' second motion to compel will be granted.

I.    **Background**

Disabled individuals and the Equal Rights Center[1] (collectively "Plaintiffs") filed this lawsuit against the Washington Metropolitan Area Transit Authority ("WMATA") alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et*

_____

[1] This case was initially brought by the Disability Rights Council of Greater Washington.  At the request of

*seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*., and 42 U.S.C. § 1983.[2]  Plaintiffs claim that WMATA has failed to provide adequate paratransit services through the MetroAccess program and that the service provided is materially inferior to the Metrorail and Metrobus services available to people without disabilities. See generally Second Amended Complaint ("Compl.").  Plaintiffs' prayer for relief includes a request for a permanent injunction "ordering Defendants to immediately cease its discrimination and provide individuals with disabilities full, equal and reliable access to the benefits of its facilities, programs, services, and activities" and "ordering Defendants to develop and implement a remedial plan, complying with the requirements of the ADA and Rehabilitation Act." Compl. at 43.  Discovery has been heavily litigated in this case and is now scheduled to close June 15, 2007.

**II.     Defendants' Motion to Compel Production of Documents**

A.     Background

In its first motion to compel, WMATA moves the Court to order Plaintiffs to produce what it claims are approximately 40,000 pages of documents and any electronic documents received pursuant to its third-party subpoena of LogistiCare. Defs. Mot. Comp. at 1.[3]  Defendants claim they are entitled to any documents received from a third party pursuant to a subpoena duces tecum under Federal Rules of Civil Procedure 34 and 45(b)(1). Id.  Plaintiffs oppose production on the grounds that the collection of documents constitutes privileged attorney work product. Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Compel Production of

---

the parties, the Equal Rights Center was substituted as a plaintiff on April 2, 2007.

[2]  All references to the United States Code are to the electronic versions available in Westlaw or Lexis.

[3]  The pleadings are unclear as to whether the 40,000 figure applies to the total number of documents produced by LogistiCare or to the selection of documents culled by Plaintiffs.  WMATA appears to use the

Documents ("Pls. Opp. Comp.") at 5.

The documents at issue are customer complaint files maintained by LogistiCare, the former contractor to WMATA for the provision of services to the disabled, lodged by disabled riders who complained that they failed to receive adequate paratransit service during the term of LogistiCare's contract. See Defendants' Memorandum of Points and Authorities in Support of Their Motion to Compel Production of Documents ("Defs. Mem. Comp.") at 1-2.[4]  Defendants argue that Plaintiffs stealthily gathered these materials without providing copies to WMATA as required by the Federal Rules of Civil Procedure. Id. at 1-3.  Plaintiffs claim full compliance with the Rules in providing notice of its third-party subpoena to Defendants. Pls. Opp. Comp. at 4.  Moreover, Plaintiffs argue that, as the documents maintained by LogistiCare were once within Defendants' custody and control, the only reason for Defendants' current motion is their own failure to preserve the documents for themselves. Id. at 5.  Defendants should not thus be rewarded with access to the work product of Plaintiffs' document search. Id.

Specifically, Defendants seek the subset of complaints selected by Plaintiffs as relevant to their case. See Pls. Opp. Comp. at 2.  According to Plaintiffs, following the expiration of the contract, LogistiCare notified both parties that the complaint files would be moved at some future date from its facility in Silver Spring, Maryland, to another facility out of state. Id.  Plaintiffs then undertook a tactical review of the documents for approximately two weeks, searching through over forty boxes of documents to collect the complaints consistent with Plaintiffs' counsel's theory of the case. Id. at 3.

Though it does not deny receiving notice of Plaintiffs' subpoena to LogistiCare,

---

number to refer to the documents culled by Plaintiffs from the entire body of documents.
[4]  WMATA's contract with LogistiCare ended in January 2006. See Pls. Opp. Comp. at 2.

WMATA claims it was not given the opportunity to obtain the documents at the time of their production by LogistiCare in violation of Rule 45(b)(1). Defs. Mem. Comp. at 3. While conceding that the entire body of documents disclosed to Plaintiffs by LogistiCare should be disclosed to Defendants, Plaintiffs claim that the *compilation* of documents painstakingly collected by Plaintiffs' counsel from the entire body of documents is protected attorney work product, and therefore need not be disclosed to Defendants under Rule 26(b)(3) without a showing of substantial need and that Defendants cannot obtain the substantial equivalent without undue hardship. Pls. Opp. Comp. at 5-6.  Disclosure of the collection of documents sought by Defendants would expose Plaintiffs' counsel's thought processes in preparing for litigation. Id. at 7.  As the Defendants once had access to the same documents at issue, Plaintiffs argue Defendants cannot show a substantial need for the documents and should not benefit from Plaintiffs' efforts when WMATA failed to collect any on their own. Id. at 6.

Defendants reply that Plaintiffs did not comply with the spirit of Rule 45 in their failure to have the documents produced at a mutually agreeable time and place; instead, Plaintiffs arranged privately with LogistiCare to review the documents and copy selections where the documents were being stored. Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Compel Production of Documents ("Defs. Rep. Comp.") at 1.  Defendants argue further that Plaintiffs' selection of documents cannot possibly reveal any mental impressions of counsel when the number of documents totals over 40,000 pages. Id. at 3.  Moreover, the fact that the documents were prepared by LogistiCare and remain in LogistiCare's control while LogistiCare refuses to share the documents with WMATA negates the claims of any work product privilege. Id. at 4.

WMATA claims that any work product privilege has been waived because Logisticare has in its possession the compilation claimed to be work product.

B.      Plaintiffs' Selection of Documents Constitutes Fact-Based Work Product

As this Court has previously held, the seminal case on the work product status of documents culled from a larger collection is the Third Circuit's opinion in Sporck v. Peil, 759 F.2d 312, 316 (3rd Cir. 1985), where the court found that an attorney's selection of a "few documents out of thousands" produced constitutes protected work product. See Miller v. Holzmann, 238 F.R.D. 30, 31 (D.D.C. 2006).  Thus, in a given case, "[b]ecause identification of the documents as a group will reveal defense counsel's selection process, and thus his mental impressions, . . . the identification of the documents as a group must be prevented to protect defense counsel's work product." Id. (quoting Sporck, 759 F.2d at 315).

The holding in Sporck has been applied or refined in subsequent circuit decisions. In Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986), the court, following Sporck, found that, when a lawyer testified that she "identified, selected, and compiled documents that were significant to her client's defenses in this case," the selection process was to be protected as work product because it reflected that lawyer's legal theories and thought processes. Id. at 1328; accord In re Allen, 106 F.3d 582, 608 (4th Cir. 1997) (choice and arrangement of documents constituted opinion work product because a lawyer's "selection and compilation of these particular documents reveals her thought processes and theories regarding this litigation").

In Gould v. Mitsui Mining & Smelting Co., Ltd., 825 F.2d 676 (2d Cir. 1987), however, the court indicated that Sporck applies only when the threat that the disclosure

of a selection and compilation of documents by counsel would reveal counsel's thought process was "real, rather than speculative." Id. at 679-80. It therefore remanded the case to have that lower court make that determination. Id.; cf. Simon v. G.D. Searle & Co., 816 F.2d 397, 402 (8th Cir. 1987) (protection provided by work product doctrine is "not violated by allowing discovery of documents that incorporate a lawyer's thoughts in, at best, such an indirect and diluted manner").

A significant limiting of the Sporck principle occurred in In Re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007 (1st Cir. 1988). There, the court addressed the legitimacy of a requirement imposed by a magistrate judge that the parties identify and disclose the documents they would use to interrogate a deponent five days before the deposition. Id. at 1009. The court upheld this requirement against a challenge that it invaded the mental processes of the lawyer taking the deposition. Id. at 1019. The court denied the opinion work product granted in Sporck because the lawyer who was going to use the documents during the deposition could not possibly have a reasonable expectation that the documents would remain secret. In other words, "the exhibits are integral to the taking of the deposition and will, by definition, have to be revealed during the session." Id. at 1017. The San Juan court distinguished this situation from that of Sporck and Shelton where the documents used to prepare a witness for a deposition or to assemble to defend the client "were never meant to be placed on public display." Id. at 1018. Nevertheless, the court in San Juan acknowledged that requiring disclosure of the exhibit list before the deposition "provides insight into opposing counsel's understanding of the case." Id. at 1018-19. Therefore, the court held that the process of selection yielding the lists constituted ordinary as opposed to opinion work product. Id.

The distinction is a significant one.  Opinion work product, such as that would disclose the mental impressions, conclusions, opinions, or legal theories of an attorney, may be reflected in interviews, statements, memoranda, correspondence, and countless other tangible and intangible ways. See Hickman v. Taylor, 329 U.S. 495, 511 (1947); Tax Analysts v. Internal Revenue Serv., 117 F.3d 607, 619 (D.C. Cir. 1997).  It therefore is entitled to special protection "and require[s] a stronger showing of necessity to justify release." Banks v. Office of the Senate Sergeant-at-Arms and Doorkeeper, 236 F.R.D. 16, 19 (D.D.C. 2006); Byers v. Burleson, 100 F.R.D. 436, 439 (D.D.C. 1983) (citing Fed. R. Civ. P. 26(b)(3) and Upjohn Co. v. United States, 449 U.S. 383, 400-01 (1981)).  Ordinary or fact-based work product, on the other hand, is not subjected to the "stronger showing of necessity" required for opinion work product.  Production of fact-based work product only requires "a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3).

In this jurisdiction, the court applied this principle in Washington Bancorporation v. Said, 145 F.R.D. 275 (D.D.C. 1992), where the court held that a document index was attorney work product as it had been prepared by an attorney in anticipation of litigation. Id. at 279.  The index itself spanned four volumes and hundreds of pages in reference to thousands of documents contained in 2400 boxes. Id. at 276.  In deciding if the index constituted opinion or fact-based work product, the court found that the index was actually a "hybrid" of the two; it was "factual in nature but opinionative in structure" because it organized factual information in a way that might reveal the attorney's

opinions about the case. Id.  Ultimately, however, the sheer volume of documents catalogued led the court to deem the index fact-based work product only because its size made it virtually impossible to glean any litigation strategy from the index. Id. at 277.

In Miller v. Holzmann, 238 F.R.D. 30 (D.D.C. 2006), I followed Washington Bancorporation and concluded that "the number of documents that were scanned, approximately 20,000, is so large that it would be difficult to conceive of [the defendant] gleaning plaintiffs' trial strategy solely by virtue of plaintiffs' disclosing the identity of the documents." Id. at 33 (citing In re Shell Oil Refinery, 125 F.R.D. 132 (E.D. La. 1989) ("[I]t is highly unlikely that Shell will be able to discern the PLC's 'theory of the case' or though processes simply by knowing which 65,000 documents out of 660,000 documents have been selected for copying.")).

The same analysis applies to the current situation.  Though the complaints filed with LogistiCare themselves were created by a third party, the compilation of the documents by Plaintiffs' counsel is indeed done by an attorney in preparation for this litigation, similar to the index in Washington Bancorporation.  Moreover, even though the court in San Juan limited the Sporck holding by differentiating between opinion and ordinary work product, it did so while maintaining that the process of selecting documents is unquestionably entitled to at least the protection given fact-based or ordinary work product. San Juan, 859 F.2d at 1018-19; accord Miller, 238 F.R.D. at 32. Therefore, the subset of complaints in Plaintiffs' control is unquestionably attorney work product.  However, with the number of those documents said to be totaling into the thousands, it would be difficult to conceive that Plaintiffs' trial strategy could be gleaned solely by virtue of Plaintiffs' disclosure of the documents selected.  Furthermore, nothing

indicates the documents contain any attorney notes or impressions. See Washington

Bancorporation, 145 F.R.D at 278.  I therefore find that the compilation of complaints is,

at most, fact-based work product.  The question that follows is whether WMATA has

shown a substantial need and undue hardship under the balancing of interests analysis

required by Rule 26(b)(3).  I find that WMATA has not made the required showing.

C.      WMATA Has Not Shown Substantial Need or Undue Hardship

Even if the Court finds work product applies to this situation, WMATA argues

good cause exists to order the production of documents. Defs. Rep. Comp. at 6.

WMATA claims it cannot obtain the documents from LogistiCare because LogistiCare

"repudiated" its contract with WMATA. Id.  But, whatever the contractual relationship

between WMATA and LogistiCare, LogistiCare's counsel advised me in open court that

it would make the entire compilation of documents available to WMATA in Atlanta.

Transcript of Motions Hearing on January 25, 2007 ("Tr. 1/25/07") at 13 (statement by

Mr. McNichols of LogistiCare: "[I]f [WMATA] want[s] to come down to Atlanta, we

would figure out where those boxes are and make them available, Your Honor.").

The "hardship" of WMATA going to Atlanta to review the LogistiCare

documents is a hardship of WMATA's own making.  WMATA apparently did nothing to

get the documents when they were located in nearby Silver Spring, Maryland.

LogistiCare's refusal to provide copies to WMATA of the documents selected by

Plaintiffs is distinct from its complete willingness to allow WMATA to review the full

scope of complaint files from which Plaintiffs created its privileged compilation.

Plaintiffs culled what Plaintiffs needed.  The only "hardship" about which WMATA can

complain is that it cannot get for nothing what took two weeks for Plaintiffs to compile.

Not being able to steal the product of someone else's labor is a lot of things, but a "hardship" is not one of them.

D.     Plaintiffs Did Not Violate Rule 45 or Waive Privilege

I do not see any merit in WMATA's contentions that Plaintiffs violated Rule 45 of the Federal Rules of Civil Procedure or waived work product protection by allowing LogistiCare to keep a copy of the selected documents but to not make the selection available to WMATA.

First, Rule 45(b)(1) requires "[p]rior notice of any commanded production of documents," but neither the Rule, the advisory committee note to it, or the cases interpreting it require that the subpoenaed party make available to all parties whatever one party culls from a collection that the subpoenaed party makes available. Second, the forfeiture of a privilege occurs when the privileged documents are disclosed to anyone who cannot claim the privilege. See e.g., In re Subpoena Duces Tecum, 738 F.2d 1367, 1372 (D.C. Cir. 1984). As I understand the situation here, Plaintiffs made the copy of the compilation available to LogistiCare with the understanding that LogistiCare keep the compilation secret and not examine it. In my view, the condition imposed—that LogistiCare not look at the compilation—suffices to protect the privilege from any claim of waiver or forfeiture when, as I will now do, a court orders LogistiCare not to examine the compilation pending any further order of the Court.

Thus, Defendants' motion must be denied. The compilation of complaints selected by Plaintiffs constitutes fact-based work product, and WMATA has not shown a substantial need for the documents or an undue hardship in obtaining the substantial

equivalent of Plaintiffs' collection.[5]  Furthermore, Plaintiffs did not violate Rule 45 or

waive their work product privilege.

E.      WMATA Must Have Access to All Complaint Files Produced Pursuant to
        Subpoena

        One point in Plaintiffs' Sur-Reply deserves the Court's attention.  According to

Plaintiffs, "with the exception of the rider complaints Plaintiffs' counsel culled from

LogistiCare's warehouse," all of the documents have either been received by WMATA or

are available for WMATA to review. Plaintiffs' Sur-Reply in Response to Defendants'

Reply in Support of Their Motion to Compel Production of Documents at 2.  WMATA is

free to review—and LogistiCare must make available—*all* complaint files subject to the

subpoena.  Plaintiffs may not remove documents they find valuable and subsequently

deny Defendants access to the removed documents, nor may LogistiCare provide certain

documents solely to Plaintiffs and not to WMATA. See Fed. R. Civ. P. 45(e).

Furthermore, Plaintiffs have offered no legal basis for doing so.  Though neither

Plaintiffs nor LogistiCare need produce a copy of the compilation of documents found to

support Plaintiffs' case, Defendants have every right to review all of the complaint files

LogistiCare has in Atlanta.

III.    **Plaintiffs' Motion to Compel Electronic Documents**

        Plaintiffs move the Court to order WMATA to produce backup tapes of certain

electronic documents written and received since the filing of this lawsuit. Pls. Mot.

Comp. at 1.  Plaintiffs argue that WMATA failed to properly instruct employees to retain

potentially responsive electronic documents and therefore should pay to create the

---

[5] Plaintiffs suggest Defendants should reimburse them for the time and expense incurred in obtaining the documents from LogistiCare. Pls. Opp. Comp. at 9.  However, as Plaintiffs secured the documents without an order from the Court guaranteeing reimbursement for their efforts, the Court will not so order now.

backup tapes. Id. at 2-4.  Remarkably, although the complaint in this case was filed on

March 25, 2004, WMATA acknowledges it did nothing to stop its email system from

obliterating all emails after sixty days until, at the earliest, June of 2006. WMATA's

Opposition to Plaintiffs' Motion to Compel ("Defs. Opp. Comp.") at 6.

   More specifically, Mr. Oswald Johnson, Senior Technical Systems Specialist for

WMATA, testified at a hearing before this Court on February 28, 2007, that Groupwise is

WMATA's official email system and it is programmed with an automatic deletion feature

that deletes any email after it has been in existence for sixty days. Transcript of Motions

Hearing on February 28, 2007 ("Tr. 2/28/07") at 14-15.  This applies universally whether

the email is unread, in a folder that the sender or recipient has created, or in the user's

"Sent" or "Trash" folders. Id. at 17-18.  While the user may defeat this feature by

archiving the email, i.e., placing it in a location of the user's choosing in an encrypted

format, the majority of WMATA employees apparently did not do this.  As a result, with

the exception of three individuals, there has been a universal purging of all possibly

relevant and discoverable emails every sixty days at least since the complaint was filed

three years ago.[6]

   Understandably, WMATA does not defend its failure to prevent the automatic

feature from operating during the course of this litigation.  Its failure is indefensible. See

Tr. 2/28/07 (statement of Mr. Heppen for WMATA: "And we don't deny that there

should have been a litigation hold put on these documents at the time of the filing of the

case.").  While the new amendment to Rule 37 of the Federal Rules of Civil Procedure

---

[6] WMATA claims that all emails of Christian Kent, director of MetroAccess, and Steve Yaffe, Chief
Operating Officer to whom Christian Kent reports, have been produced. Defs. Opp. Comp. at 5.  WMATA
also agreed to search the email of the head of procurement, Lucy Jackson, dating back to the inception of
this action. Id.  All three individuals defeated the universal deletion process by archiving all emails after

indicates that, absent exceptional circumstances, a court may not impose sanctions on a party for "failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system," it is clear that this Rule does not exempt a party who fails to stop the operation of a system that is obliterating information that may be discoverable in litigation. See Fed. R. Civ. P. 37(e) (formerly Fed. R. Civ. P. 37(f), amended April 30, 2007).  In words that could be describing this very case, the advisory committee note to that Rule[7] states:

> [Rule 37(e)] applies to information lost due to the routine operation of an information system only if the operation was in good faith. Good faith in the routine operation of an information system may involve a party's intervention to modify or suspend certain features of that routine operation to prevent the loss of information, if that information is subject to a preservation obligation.  A preservation obligation may arise from many sources, including common law, statutes, regulations, or a court order in the case.  The good faith requirement of [Rule 37(e)] means that a party is not permitted to exploit the routine operation of an information system to thwart discovery obligations by allowing that operation to continue in order to destroy specific stored information that it is required to preserve.  When a party is under a duty to preserve information because of pending or reasonably anticipated litigation, intervention in the routine operation of an information system is one aspect of what is often called a "litigation hold."

Fed. R. Civ. P. 37, advisory committee note (2006 amendments).[8]

Moreover, Rule 37(e) is inapplicable to this instance because Plaintiffs are not seeking sanctions but that WMATA be required to search the backup tapes for discoverable information previously deleted. Tr. 1/25/07 at 19-20.  Even this may prove difficult, however, as Mr. Johnson testified that the information on the backup tapes is

---

sixty days. Id. at 6.

[7] Confusingly, the latest revision to the Federal Rules of Civil Procedure moved what once was Rule 37(f) to Rule 37(e).

[8] Note that at the hearing, Mr. Johnson conceded the existence of commercially available software that is programmed to impose a litigation hold on a system that is otherwise programmed to delete information

obliterated when the tapes are recycled. Tr. 2/28/07 at 23.  The daily tapes are recycled

every seven days and the weekly tapes every forty-five days. Id.  The monthly tapes,

however, take a snapshot of the network system on any given day; they are retained

permanently and are a full backup of the system on that given day. Id.

Plaintiffs propose that the backup tapes be restored so that, once rendered

searchable, their contents can be searched by a keyword analysis to find the emails of

several persons they have identified by name. See Reply in Support of Plaintiffs' Motion

to Compel Production of Electronic Documents at 9; Tr. 2/28/07 at 25.  Once the emails

are found, they ask that they be converted into TIF format because their computer system

cannot read Groupwise data.[9] Tr. 1/25/07 at 21-22, 37.  They ask that this be done on a

rolling basis, i.e., WMATA will attempt to restore and then produce the emails of a

particular person and that person's deposition will then be taken as WMATA then moves

to the next individual. Tr. 2/28/07 at 34; Tr. 1/25/07 at 16.

WMATA resists having to do this on the grounds of burden and expense. Defs.

Opp. Comp. at 8-9.  Moreover, WMATA insists that the backup tapes are not reasonably

accessible and there is little reason to suppose that they will produce relevant

information. Id. at 10.  As it has insisted throughout this case, once WMATA changed the

contractor who provides transportation services for the disabled, there is, according to

WMATA, little reason to consider the information pertaining to the deficiencies in the

performance of the former contractor. Id. at 4.

While the newly amended Federal Rules of Civil Procedure initially relieve a

party from producing electronically stored information that is not reasonably accessible

---

periodically and automatically. Tr. 2/28/07 at 21-22.
[9] WMATA has converted its data into TIF files during discovery in this case.

because of undue burden and cost, I am anything but certain that I should permit a party

who has failed to preserve accessible information without cause to then complain about

the inaccessibility of the only electronically stored information that remains.  It reminds

me too much of  Leo Kosten's definition of chutzpah: "that quality enshrined in a man

who, having killed his mother and his father, throws himself on the mercy of the court

because he is an orphan."[10]  Be that as it may, as Rule 26(b)(2)(B) makes clear, a court

may nevertheless order discovery from sources that are not reasonably accessible upon a

showing of good cause and after considering the limitations of Rule 26(b)(2)(C).[11]  Those

limitations compel a court to weigh benefit against burden.  In the specific context of

ordering discovery of electronically stored information from reasonably inaccessible

sources, the advisory committee note to amended Rule 26(b)(2)(B) identifies the specific

factors that the court should take into account before it orders discovery from sources that

are not reasonably accessible. It states:

> The decision whether to require a responding party to search for
> and produce information that is not reasonably accessible depends
> not only on the burdens and costs of doing so, but also on whether
> those burdens and costs can be justified in the circumstances of the
> case.  Appropriate considerations may include: (1) the specificity
> of the discovery request; (2) the quantity of information available
> from other and more easily accessed sources; (3) the failure to
> produce relevant information that seems likely to have existed but
> is no longer available on more easily accessed sources; (4) the
> likelihood of finding relevant, responsive information that cannot
> be obtained from other, more easily accessed sources; (5)
> predictions as to the importance and usefulness of the further
> information; (6) the importance of the issues at stake in the
> litigation; and (7) the parties' resources.

---

[10] See http://www.amazon.com/Joys-Yiddish-Leo-Rosten/dp/0070539758.
[11] Federal Rule of Civil Procedure 26(b)(2)(B) states: "A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)."

Fed. R. Civ. P. 26, advisory committee note (2006 amendments).

Application of these factors make for an overwhelming case for production of the backup tapes.  Starting with the last two factors, the importance of the issue at stake and the parties' resources, Plaintiffs are physically challenged citizens of this community who need the access to public transportation that WMATA is supposed to provide.  That persons who suffer from physical disabilities have equal transportation resources to work and to enjoy their lives with their fellow citizens is a crucial concern of this community.  Plaintiffs have no substantial financial resources of which I am aware and the law firm representing them is proceeding pro bono.

As to factors one through four, the request is for the emails of specific persons, and there is absolutely no other source from which the electronically stored information can be secured, thanks to WMATA's failure to impose a litigation hold.

WMATA can only put up a fight as to factor five, its prediction that because there has been a change in the contractor that provides transportation to Plaintiffs, information about how those services were provided by an earlier contractor and how WMATA supervised that performance is irrelevant.  But, that forgets that Plaintiffs seek damages and not only injunctive relief. See Compl. at 43.  How Plaintiffs have been treated and what damages they seek because of it are at the very heart of the lawsuit.  As to injunctive relief, Plaintiffs certainly have a right to explore the continuum of their treatment from a reasonable point in time to the present.  Without that information, it is impossible for them to rebut WMATA's assertion that present conditions do not warrant injunctive relief or to establish the strongest possible evidentiary basis for the scope of the injunctive relief.  Isolated and recent instances of poor treatment may or may not

warrant the injunctive relief they seek only insofar as they can show that what appear to be isolated instances of denying them their rights under federal legislation are actually examples of an endemic, systematic, and long-term failure to protect Plaintiffs' rights. Certainly, Plaintiffs have the right to develop the baseline against which WMATA's claim of marked, recent improvement can be judged.

I will therefore order the search of the backup tapes Plaintiffs seek. I will order counsel to meet and confer and prepare for my signature a stipulated protocol as to how the search will be conducted. I expect the protocol to speak to at least the following concerns:

1. How will the backup tapes be restored?

2. Once restored, how will they be searched to reduce the electronically stored information to information that is potentially relevant? In this context, I bring to the parties' attention recent scholarship that argues that concept searching, as opposed to keyword searching, is more efficient and more likely to produce the most comprehensive results. See George L. Paul & Jason R. Baron, Information Inflation: Can the Legal System Adapt? 13 Rich. J.L. & Tech. 10 (2007).

3. How will the privilege review be conducted and do the parties contemplate an agreement authorized by Rule 26(b)(5)(B)?

4. How will the privilege claim be made? How will a privilege log be created and what will it have to contain to permit me to rule on the privilege claims asserted?

5. If there is to be rolling production, what deadlines are the parties going to set for production and the following related deposition?

The stipulated protocol shall be filed with the Court no later than two weeks from the date of this Memorandum Opinion.  I also note that I am working on the assumption that WMATA will continue to produce the emails in a TIF format as has been the case previously.

Plaintiffs request for costs related to this motion is denied without prejudice at this time.

## IV.    Defendants' [Second] Motion to Compel

This unopposed motion by Defendants seeks documents named by plaintiff Justin Chappell at his deposition. Defs. Mot. Comp. #2 at 1.  Plaintiffs' counsel represented at Mr. Chappell's deposition that the emails and electronic documents would be produced, but as of yet have not been able to secure Mr. Chappell's cooperation in producing them. Id. at 3.  Both parties hope a court order will motivate Mr. Chappell to comply.[12]  The Court joins in hoping such an order (and the possibility of sanctions for refusing to comply with it) will encourage Mr. Chappell's cooperation.  Defendant's motion is therefore granted and Mr. Chappell is ordered to produce the responsive documents (if he has not already done so) no later than ten days from the date of this Memorandum Opinion.

## V.    Plaintiffs' Motion Regarding Adams Deposition

Finally, Plaintiffs move the Court to order WMATA to reimburse Mr. Kevin Adams, of Knoxville, Tennessee, for his time and travel expenses relating to his deposition. Pls. Mot. Dep. at 4.  Initially, the parties disputed whether to depose Mr. Adams in Washington, D.C., or Knoxville, but that question is moot; the deposition took

---

[12] In light of the absence of any bad faith on the part of Plaintiffs' counsel, WMATA is not seeking fees and costs associated with this motion. Defs. Mot. Comp. #2 at 3.

place pursuant to a subpoena issued under Rule 45 in Knoxville on March 14, 2007,

between 9 AM and 3 PM, with one half-hour break. <u>Plaintiffs' Status Report Related to</u>

<u>the Deposition of Kevin Adams</u> ("Rpt.") ¶ 7.  Thus, the only question before the Court

relates to compensation of Mr. Adams for his time.

According to Plaintiffs, WMATA contracted with Mr. Adams in 2006 to review

and critique certain operational practices of MetroAccess. Pls. Mot. Dep. at 1.  He

prepared a report of his findings, which included interviews of WMATA employees and

contractor employees, for WMATA in December 2006. <u>Id.</u> at 1-2.  Plaintiffs argue that,

because he has not been designated an expert witness in this action under Rule

26(a)(2)(B), Mr. Adams should be treated as a fact witness, and as a result, any

compensation for Mr. Adams's time and attendance at his deposition, other than statutory

witness fees, should be paid by WMATA. <u>Id.</u> at 2-3.  Plaintiffs paid for their own

transportation to Knoxville for the deposition and have already paid Mr. Adams the

witness fee of $40 a day provided for by 28 U.S.C. § 1821(b). <u>See</u> Rpt. ¶¶ 5-6.

WMATA acknowledges that Mr. Adams was not retained as an expert under Rule

26(a)(2)(B) but argues that Mr. Adams is an expert within the meaning of Federal Rule of

Civil Procedure 26(b)(4). <u>WMATA's Opposition to Plaintiffs' Motion Regarding Adams</u>

<u>Deposition</u> ("Def. Opp. Dep.") at 1.  Mr. Adams is a transportation consultant.  WMATA

engaged his services following receipt of a report from a subcommittee of the

Washington Metropolitan Area Council of Governments ("COG") and a report by

WMATA's ad-hoc committee charged with responding to the COG report to suggest

changes to WMATA's paratransit system. <u>Id.</u>  WMATA likens Mr. Adams to a treating

medical physician, describing him as an "expert" for whom no report is required under

Rule 26(a)(2)(B), but who should be treated nonetheless as an "expert" for the purpose of paying a "reasonable fee" under Rule 26(b)(4)(C). <u>Id.</u> at 2-3.

The analogy WMATA attempts to draw between Mr. Adams and a treating physician is specious at best.  Even so, WMATA recognizes that federal courts are split on the question of payment for treating physicians under Rule 26(b)(4)(C) and provides no authority for the proposition that, in the District of Columbia, treating physicians not designated as experts are nonetheless entitled to a "reasonable fee" beyond the statutory daily rate for attendance at a deposition. <u>See</u> <u>id.</u> at 4.  The Court will not set precedent for doing so now, via analogy, for a consultant no longer under contract to Defendant.[13]

Moreover, nothing indicates WMATA hired Mr. Adams in connection with the pending litigation.  WMATA hired Mr. Adams to perform a specific service, which was completed in December of 2006.  Following the expiration of the contract, the only contact Mr. Adams had with WMATA resulted from Plaintiffs' subpoena involving his report. Def. Opp. Dep., Ex. 1, Declaration of Kevin J. Adams ("Adams Decl.") ¶ 5.  The advisory committee note to Rule 26 specifically states:

> It should be noted that [Rule 26(b)(4)] does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit.  Such an expert should be treated as an ordinary witness.

Fed. R. Civ. P. 26, advisory committee note (1970 amendments).

In the well-reasoned opinion upon which WMATA relies, <u>Hoover v. United</u>

---

[13] WMATA's argument for payment out of protection of intellectual property under <u>Klay v. All Defendants</u>, 425 F.3d 977, 984 (11th Cir. 2005), is a non-sequitor. <u>See</u> Def. Opp. Dep. at 4.  WMATA acknowledges the issue "is not [Plaintiffs'] access to the report, but rather their right to depose [Adams] without cost to themselves." <u>Id.</u> at 2.  Plaintiffs do not seek to depose Mr. Adams without cost; they have in fact paid the statutory fees for fact witnesses. <u>See</u> Rpt. ¶ 5.  Plaintiffs dispute that payment is required at expert rates.

States, No. 01-2372, 2002 WL 1949734 (N.D. Ill. 2002), the court held that the 1993

amendments to Rule 26 expanded the understanding of "expert" to include three

categories of "expert" for the purposes of discovery: (1) retained experts who may testify

at trial and from whom a report is required; (2) non-retained experts, not required to

submit a report, who are disclosed as witnesses who may offer testimony at trial under

Federal Rule of Evidence 702; and (3) retained experts who will not testify at trial.

Hoover, 2002 WL 1949734 at *4.  But, on this record, Mr. Adams falls into none of these

three categories.  He was not hired for the purpose of providing information or an opinion

in anticipation of trial as either a testifying or non-testifying expert, and he has not been

identified as a witness to offer testimony at trial under Rule 702.  Therefore, Rule 26 does

not apply to his deposition, and he is not entitled to compensation at his hourly rate by the

deposing party.[14]

The Court sympathizes with Mr. Adams if he in fact relied on a promise that his

attendance at a deposition would yield the $150 per hour he was paid under the contract

with WMATA.[15]  Unfortunately, if he attended the deposition without a guarantee from

this Court that he would receive his requested fee, he did so at his own peril.  As he

himself acknowledged, nothing in his contract guaranteed reimbursement of hourly fees

in connection with litigation, providing testimony, or traveling to a deposition. Adams

Decl. ¶ 1. Furthermore, nothing suggests he moved the issuing court under Rule 45 to

quash the subpoena on the basis that it caused him an undue burden. See Fed. R. Civ. P.

---

[14] Authority cited by WMATA is not to the contrary. See Haarhuis v. Kunnan Enter., Ltd., 177 F.3d 1007, 1014-15 (D.C. Cir. 1999) (reasonable fee ordered above the statutory fact witness fee for qualified expert witness); Mock v. Johnson, 218 F.R.D. 680, 682 (D. Hi. 2003) (reasonable fee ordered for treating psychologist identified in initial disclosures as "her expert treating psychologist," though plaintiff failed to provide written report); Washington v. Greenfield, No. 86-930, 1986 WL 15758 (D.D.C. Oct. 15, 1986) (plaintiff required to pay reasonable fee for deposing defendant's designated experts).

[15] It is unclear to the Court on this record who made such a promise, if one was made at all, or what the

45(c)(3)(A).  Thus, this Court has no basis on which to order either party to compensate Mr. Adams beyond the statutory requirement of $40 per day.

**VI.**     **Conclusion**

For the reasons discussed herein, <u>Defendants' Motion to Compel Production of Documents</u> and <u>Plaintiffs' Motion Regarding Adams Deposition</u> will be denied; <u>Plaintiffs' Motion to Compel Production of Electronic Documents</u> and <u>Defendants' [Second] Motion to Compel Production of Documents</u> will be granted.  An Order accompanies this Memorandum Opinion.


_____/s/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE


Dated: June 1, 2007

terms of the promise required.